PATRICIA JONES, BARBARA POWERS, AND ENNIO PASQUAR-
IELLO, PLAINTIFFS-RESPONDENTS, v. DOROTHY H. WAR-
REN, TOWNSHIP CLERK OF THE TOWNSHIP OF STAFFORD,
AND OCEAN COUNTY BOARD OF ELECTIONS, DEFEND-
ANTS-RESPONDENTS, AND WESLEY K. BELL, DEFENDANT-
APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 18, 1984—Decided October 10, 1984.

Before Judges ANTELL, J.H. COLEMAN and SIMPSON.

*Richard M. Hluchan* argued the cause for appellant Wesley K. Bell (*Sterns, Herbert & Weinroth,* attorneys; *Richard M. Hluchan* of counsel and *Loraine Schewior* and *Linda K. Stern* on the brief).

*Jerry J. Dasti* argued the cause for defendant-respondent Dorothy H. Warren (*Dasti & Murphy,* attorneys; *Jerry J. Dasti* of counsel and *Craig L. Wellerson* on the brief).

*Richard P. Visotcky* argued the cause for plaintiffs-respondents Patricia Jones, et als (*Masch & Visotcky,* attorneys; *Richard P. Visotcky* on the brief).

The opinion of the court was delivered by

ANTELL, P.J.A.D.

Pursuant to *N.J.S.A.* 40:69A–169, on August 22, 1983 plaintiffs submitted to defendant Stafford Township Clerk a petition for the recall of intervenor Wesley K. Bell as Mayor. On September 2, 1983 this action was started on verified complaint in lieu of prerogative writs and an order to show cause seeking various forms of relief against the township clerk based upon the latter's refusal to certify that the petition contained the requisite number of qualified signatures to mandate a recall election.

On September 7, 1983, the return date of the order to show cause, all parties appeared before the court. Also appearing before the court was Mayor Bell. Although he had not yet prepared papers, his interest in the proceedings was apparent and his "right to intervene with respect to the narrow issues that are raised in this order to show cause" was recognized.

He was also given leave to "file some affirmative pleadings."
Because Mayor Bell's attorney found it necessary to take part
in religious observances the following day an understanding
was arrived at between the Court and all counsel. The Mayor's
failure to participate in the order to show cause proceeding then
before the court would not preclude him from litigating issues
material to the complaint after these had been established by
the Mayor filing a counter-claim against plaintiffs and a cross-
claim against the township clerk pursuant to an order of
intervention. Thus, at the outset of the hearing which began
September 8, 1983 the court categorically stated that the oppor-
tunity of Mayor Bell's attorney

> ... to file an affirmative attack upon this petition for whatever legal bases he
> has or means that he has available is intact and we can proceed this morning
> with respect to the order to show cause.

We conclude from our careful examination of the transcript
that the trial court correctly stated the intention of the parties
in this respect.

*N.J.S.A.* 40:69A–169 requires that a recall petition be signed
by at least 25% of the registered voters of the municipality.
After the hearings of September 7 and 8 and October 5, it was
decided by the trial court, among other things, that 1589
signatures were required. The recall petition before the court
contained only 1477 valid signatures, however—112 short of the
requisite number. Jurisdiction of the matter was retained and
the plaintiffs were granted until September 12, 1983 to amend
their petition by the collecting of additional signatures in ac-
cordance with *N.J.S.A.* 40:69A–170. These determinations were
memorialized by an order dated September 20, 1983.

An amended petition was filed on September 12, 1983 and
determined by the clerk to contain 151 valid signatures. The
increased total number of valid signatures was now 1628, 39
more than the 1589 required.

On September 20, 1983 Mayor Bell filed his counter-claim and
cross-claim in intervention, and hearings thereon were conduct-

ed on six separate dates in November 1983. It is essential to note that his hearing was presided over by a different judge than the one who conducted the earlier proceeding on September 7 and 8, and on October 5, 1983.

In substance, Mayor Bell's contentions were that (1) a substantial number of petitioning signatures were improperly attested to in that the attesting witness had not actually observed the signatures being placed on the petition; (2) certain of the signatures were obtained by fraud on the part of the solicitors; (3) certain of the signers were not residents of the municipality. The trial judge disposed of these contentions by concluding that *N.J.S.A.* 40:69A–170 did not require that the attesting witness actually observe the signature being placed on the petition. In his words, "I find that the statutory requisites do not require such personal knowledge...." As to the claim of fraud, the judge ruled in conclusory fashion that he found "... no evidence of fraud in this case whatsoever."

Underlying the trial judge's analysis of the case before him was his clearly stated understanding that the 1477 signatures found valid by the previous judge after the first hearing were to be inviolate, and that under no circumstances was he free to alter the rulings already made by the previous judge as to those signatures. As he stated, "... that finding of fact is binding on this Court. Whether by estoppel or *res judicata* or whatever label that you put on it...." Finally, in directing dismissal of the intervenor's counter-claim and cross-claim the trial judge stated "... I do not find more in this entire set of petitions, more than 50 that should be disqualified." We gather from the context of the transcript in which this statement was made that his reasons for disqualification were grounded in the nonresidence of certain of the signers. Nowhere thereafter did he specify which of the signatures should be invalidated nor the exact number disqualified beyond saying that it was no more than 50.

The number of signatures already validated, it will be remembered, totaled 1628, only 39 more than the required 1589. When it was called to his attention that if "your Honor removed 50 signatures then the petition would fail," the judge replied only, "I disagree. You can argue all you want."

■ We are frank to say that the area of disagreement the trial judge had in mind is by no means clear. The arithmetic of the situation is beyond debate, and when the implications of his ambiguous finding were called to his attention the judge should have acted on the opportunity to eliminate the confusion his ruling had created. It is obvious that, if for no other reason, the matter requires a reversal and remand for clarification as to the exact number of signatures invalidated, the identity of each signature invalidated and a statement of findings and reasons therefor.

■ We next consider whether the signatures on the petitions were correctly attested. *N.J.S.A.* 40:69A–170, insofar as material, provides:

> The signatures to a recall petition need not all be appended to one paper but each signer shall add to his signature his place of residence giving the street and number or other sufficient designation if there shall be no street and number. *One of the signers to each such paper shall take an oath before an officer competent to administer oaths ... that each signature to the paper appended is the genuine signature of the person whose name it purports to be.* [Emphasis supplied].

It is concluded that the italicized language of the foregoing excerpt mandates that the genuiness of the signatures be attested to on the basis of personal knowledge. Without such assurance, attestation could be based upon information gathered from utterly untrustworthy sources and the requirement of attestation would serve no useful purpose. Although in *Stone v. Wyckoff*, 102 *N.J.Super.* 26 (App.Div.1968) we declined to invalidate all the signatures on a petition where it was shown that only a single signature thereon had not been personally

witnessed by the attestor, we left no doubt that the "technical untruthfulness of the affidavit in the respect noted ..." could not satisfy the requirement of the statute. And in *Seiden v. Allen*, 135 *N.J.Super.* 253 (Ch.Div.1975) it was held that *R.* 4:17–4(a), which requires interrogatories to be answered "under oath * * * inferentially mandates that any oath required by the rules of court must affirm the truth of the answers supplied on the basis of personal knowledge, and not on the basis of hearsay," *Id.* at 256–256. We perceive nothing in the policy underlying the statutory machinery for recall of elected municipal officials which diminishes the need for this safeguard to insure the purity of the information which sets the machinery in motion.

Finally, we address the action taken below to the extent that it was influenced by the judge's belief that he was not free to rule anew as to the validity of the 1477 signatures validated at the hearing of September 7 and 8 and October 5. This conclusion by the trial judge at the second hearing was evidently sponsored by his apprehension that the first trial judge could not have undertaken to resolve these issues while expecting them to be challenged in a later proceeding brought by the intervenor. Subject to the reservation that the first trial judge might have acted as he did for reasons unknown to us, we agree that the interests of sound judicial management might have been better served by adjourning the first hearing until it could be tried together with the plenary hearing brought on the intervenor's counter-claim and cross-claim. Nevertheless, the first hearing and determination on the order to show cause was expressly conditioned on the possibility that they would be later attacked by the intervenor. The trial judge at the second hearing was not free to disregard the understanding reached by the parties and the court; by refraining from making any findings which might disturb the rulings made after the first hearing he committed error.

For these reasons, we find it necessary to vacate the order of November 28, 1983 dismissing the counter-claim and cross-claim and remand the matter to the Law Division for reconsideration, findings of fact, and a statement of reasons and conclusions not inconsistent with the foregoing opinion. In connection therewith, the trial judge is at liberty to take such further evidence and conduct such further proceedings as may, in his discretion, be conducive to a just disposition on the merits. The trial judge is specifically directed to make factual findings as to each signature claimed by the intervenor to have been fraudulently or improperly obtained and correlate his factual findings to his ultimate conclusion so that a reviewing court may determine whether the judgment entered "appears to be undergirded by legal proof of substantial probative value and by specific factual findings thereon." *Reiser v. Simon*, 63 *N.J.Super.* 297, 300–301 (App.Div.1960). Also see *McCann v. Biss*, 65 *N.J.* 301, 304 n. 2 (1974); *Mol v. Mol*, 147 *N.J.Super.* 5, 9 (App.Div.1977); *Kenwood Assocs. v. Bd. of Adj. Englewood*, 141 *N.J.Super.* 1, 4 (App.Div.1976). He is further directed to make specific factual findings as to whether the signatures challenged for lack of proper attestation were or were not personally observed by the attesting witness to have been placed on the petition. Finally, the trial judge is directed to make specific factual findings as to those signers whose signatures are challenged for lack of residence within the municipality.

The order under review is vacated and the matter is remanded for further proceedings in the respects noted. The trial judge is to file his findings and conclusions with the Clerk of the Appellate Division within 30 days of the date of this opinion and counsel are directed to serve on each other and file with the Clerk of the Appellate Division within 20 days thereafter briefs, which may be in letter form, addressed to the issues raised by the trial judge's findings and conclusions. We retain jurisdiction.