**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2316-19

DKNJ REAL ESTATE
AND APPRAISAL, LLC,
and DIANE TRUGMAN,

     Plaintiffs-Appellants,

v.

REUSSI CAPITAL LIMITED
LIABILITY COMPANY,
d/b/a REUSSI CAPITAL, LLC,
501 LAKE TERRACE, LLC,
and PETER SIEGEL,

     Defendants-Respondents.

_____

Submitted January 13, 2021 – Decided February 10, 2021

Before Judges Rose and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1986-19.

Stephen A. Gravatt, attorney for appellants.

Fox Rothschild, LLP, attorneys for respondents (Andrew J. Karas, on the brief).

PER CURIAM

Plaintiffs DKNJ Real Estate and Appraisal, LLC (DKNJ) and Diane Trugman[1] appeal from the February 3, 2020 order entered by the Law Division judge granting summary judgment to defendants Reussi Capital Limited Liability Company d/b/a Reussi Capital, LLC, 501 Lake Terr, LLC, and Peter Siegel.  The judge denied plaintiffs the right to a real estate broker's commission from defendants because plaintiffs failed to comply with the strict requirements of the statute of frauds, N.J.S.A. 25:1-16.  Additionally, the judge determined that plaintiffs' failure to comply with the statute of frauds prevented recovery on breach of contract, quantum meruit, and tortious interference with contractual relations and that plaintiffs were not the efficient procuring cause of the sale. We affirm.

I.

We derive the following facts from the motion record viewed in the light most favorable to plaintiffs.  Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).  In April of 2018, Trugman, a licensed New Jersey real estate broker, acting on behalf of DKNJ, contacted

---

[1]  We refer to DKNJ and Trugman as plaintiffs and plaintiff throughout this opinion.

Siegel to inquire whether his company was interested in purchasing 501-511 Lake Terrace (Lake Terrace property), a residential apartment complex in Bradley Beach. Siegel is a managing member of Reussi Capital, LLC. The Lake Terrace property "was not listed [for sale] . . . on the Multiple Listing Service . . . nor with any other real estate broker." On May 4, 2018, defendants submitted a written offer to Trugman to purchase the Lake Terrace property. In May 2018, Siegel sent Trugman a text message stating, "and if I can make it work, I will pay you [sic] fee directly?"

On July 12, 2018, Trugman sent defendants a proposed broker commission agreement setting forth a proposed commission of two percent of the purchase price. Defendants never signed the July 12, 2018 agreement. The next day, July 13, 2018, defendant sent Trugman a counter commission agreement proposing a flat commission fee of $100,000 in the event the total purchase price did not exceed five million dollars. This agreement was signed by defendants but not by Trugman or anyone on behalf of DKNJ.

On July 14, 2018, Trugman sent a text message to Siegel stating she "would appreciate [the commission agreement] stating [two] percent of [the] price and not a dollar amount." Two days later on July 16, 2018, Trugman sent Siegel an email asserting that she could not agree to the July 13, 2018 counter

3

commission agreement. In response, on July 18, 2018, Siegel sent Trugman an email stating:

> You brought the buyer and seller together. Thank you. The rest of the negotiations and the work are to be done by me unless I need something more from you . . . . The seller doesn't want to engage with you, nor do I want you engaging with the seller . . . Yes you brought me this opportunity . . . so that is valuable . . . .

On July 20, 2018, Trugman sent Siegel an email asking him to send her a commission agreement that was not contingent on the purchase price in which she has no input. On July 30, 2018, Trugman sent defendant an email stating, "I will not contact [seller] again, but I do need you to produce a reasonable commission agreement." On August 3, 2018, Trugman sent Siegel an email stating, "I will need to be notified when the transaction closes and obtain closing documents from you . . . so that I can assess the amount of commission due pursuant to our agreement for you to pay my commission on the above-referenced properties."

On August 30, 2018, plaintiffs' attorney sent Siegel a letter asking him to confirm whether he intends to pay Trugman a commission. On November 30, 2018, defendants' attorney sent a letter to plaintiffs' attorney stating that no commission agreement existed between the parties that would warrant payment. On February 8, 2019, plaintiffs' attorney sent a letter inquiring about the

commission payment. In response, on February 14, 2019, defendants' attorney sent a letter stating Trugman "has no claim for commission in connection with a transaction between the parties." In February 2019, Siegel closed title on the purchase of the Lake Terrace property.

On June 5, 2019, plaintiffs filed a complaint against defendants and an amended complaint on July 19, 2019, alleging breach of contract, quantum meruit, and tortious interference with prospective economic advantage. On October 15, 2019, in lieu of filing an answer, defendants moved to dismiss for failure to state a claim under Rule 4:6-2(e).

Trugman submitted a certification in opposition to defendants' motion to dismiss. On December 6, 2019, the judge denied defendants' motion to dismiss and converted the motion to one for summary judgment since plaintiffs relied on facts outside of their pleadings in their opposing papers. R. 4:6-2. The judge issued a schedule for supplemental briefing.

On January 24, 2020, the judge conducted oral argument on defendants' motion. Defendants' counsel argued the undisputed facts demonstrated there was no enforceable agreement between the parties, and Trugman's rejection of the July 13, 2018 counteroffer evidenced a lack of a meeting of the minds regarding the commission rate in contravention of the statute of frauds.

Plaintiffs' attorney, in turn, argued the statute of frauds was satisfied here because defendants were aware of their obligation to pay a commission to plaintiffs. Because defendants drafted their own commission agreement, plaintiffs' attorney contended "this is not a situation in which a principal is being treated unfairly by a broker who's trying to get a commission where there's no written agreement."

Plaintiffs' attorney maintained there was an agreement as to the commission rate because two percent of the purchase price sought by plaintiffs equates to $100,000, the flat rate offered in defendants' counter agreement. Further, plaintiffs' attorney argued that plaintiffs only rejected defendants' counter agreement insofar as it included a "term that the properties sell for five million or less." By virtue of Trugman's conduct, plaintiffs' attorney claimed the counter agreement was ratified because she performed all of her duties thereunder.

Following oral argument, the judge rendered a decision on the record. The judge concluded that since there was no signed commission agreement because no agreement was reached on all material terms, and the requirements of N.J.S.A. 25:1-16(d) were not satisfied, plaintiffs were not entitled to a real estate commission from defendants on breach of contract grounds. The judge further

6

determined that failure to comply with the statute of frauds precluded a quantum meruit or tortious interference with contract claim. In making her factual findings, the judge highlighted, "[t]here were ample opportunities in the communications between the parties in this case for . . . plaintiff to comply with the statute[] at a very minimum to send a confirming letter . . . ."

The judge concluded the emails between the parties violated the statute of frauds as "there was no meeting of the minds." Citing C & J Colonial Realty v. Poughkeepsie Savings Bank, 355 N.J. Super. 444, 473 (App. Div. 2002) (holding strict compliance with the statute of frauds is essential for a broker to recover a commission for the sale of real estate), the judge granted defendants' motion to dismiss the amended complaint with prejudice. Further, the judge found "there was no 'duly executed' real estate broker commission agreement."

In addressing plaintiffs' quantum meruit and tortious interference with contract claims, the judge found that a broker who fails to comply with the statute of frauds cannot obtain relief under these causes of action, citing Coldwell Banker v. Blancke P.W. L.L.C., 368 N.J. Super. 382 (App. Div. 2004) and McCann v. Biss, 65 N.J. 301 (1974). A memorializing order was entered on February 3, 2020.

A-2316-19

Plaintiffs filed a notice of appeal. Thereafter, on March 11, 2020, the judge filed a written amplification of her decision pursuant to Rule 2:5-1(b). In her amplification letter, the judge focused on the "reasons why [she] found that plaintiff[s] failed to provide compelling facts that would warrant an award on quantum meruit grounds." Citing our Supreme Court's decisions in Weichert Co. Realtors, Ltd. v. Ryan, 128 N.J. 427 (1992), McCann, 65 N.J. at 301, and Coldwell Banker, 368 N.J. Super. at 382, the judge found "upon a review of the facts, including the exchange of communications between the parties, . . . that plaintiff was not the efficient and procuring cause of the sale." Although the judge acknowledged that Trugman brought defendants and the seller together, the judge noted, "that is all that [Trugman] appears to have done." In contrast, the judge emphasized the matter under review is distinguishable from Weichert and Coldwell Banker where there was "substantial evidence that the plaintiffs procured the sales."

On appeal, plaintiffs only challenge dismissal of their quantum meruit count and raise the following arguments: (1) plaintiffs satisfied the elements required to obtain quantum meruit relief as an equitable remedy; (2) the judge's decision constitutes harmful error and produced an unjust result; (3) the judge's

finding that Trugman was not the procuring efficient cause of the sale was harmful error; and (4) the judge erred in not ordering discovery.

## II.

We review the court's rulings under well-known standards. Our review of a ruling on summary judgment is de novo. "[W]e apply the same standard governing the trial court—we review the evidence in the light most favorable to the non-moving party." Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012). "If a review of the record reveals that 'there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law,' then a court should grant summary judgment." Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (quoting R. 4:46-2(c)).

We thus consider "whether the competent evidential materials presented, when viewed in a light most favorable to the non-moving party, are sufficient to permit a factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "In applying that standard, a court properly grants summary judgment when the evidence is so one-sided that one party must prevail as a matter of law." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (citation omitted).

Because the judge granted summary judgment to defendants, we must consider the facts in a light most favorable to plaintiffs as the non-moving parties.

Further, in construing the meaning of a statute or the common law, "our review is de novo." Nicholas, 213 N.J. at 478. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995). Moreover, because the construction of contract terms is likewise a question of law, see Boss v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 92 (App. Div. 2001), we independently review the trial court's construction on a de novo basis. See Morgan v. Sanford Brown Inst., 225 N.J. 289, 302-03 (2016). For instance, whether a contract term is clear or ambiguous is a question of law. Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997).

The relevant sections of the statute of frauds, N.J.S.A. 25:1-16, are as follows:

> b. Except as provided in subsection d. of this section, a real estate broker who acts as agent or broker on behalf of a principal for the transfer of an interest in real estate . . . is entitled to a commission only if before or after the transfer the authority of the broker is given or recognized in a writing signed by the principal or the principal's authorized agent, and the writing states either the amount or the rate of commission.

10

d.  A broker who acts pursuant to an oral agreement is entitled to a commission only if: (1) within five days after making the oral agreement and before the transfer or sale, the broker serves the principal with a written notice which states that its terms are those of the prior oral agreement including the rate or amount of commission to be paid.

[N.J.S.A. 24:1-16.]

The statute of frauds must be strictly complied with.  McCann, 65 N.J. at 309-10.  See also Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 552-53 (1967) (stating that "lawmakers long ago amended the statute of frauds so as to deny brokers the right to commission on a sale of real property unless their authority from the owner to find a purchaser is given in writing").  Accordingly, under section b of N.J.S.A. 24:1-16, the real estate broker (Trugman) must have the "writing signed by the principal" (Siegel).  Because the writing was not signed by both parties, section b is not satisfied.

Based on the parties' submissions, the judge determined that no agreement was established between the parties.  One of the key elements necessary to an agreement is the amount of the commission.  Here, the judge rightfully concluded the amount of the commission was never agreed to by the parties.

"The amount of compensation . . . is an essential term of any contract." MDC Inv. Prop., L.L.C. v. Marando, 44 F. Supp. 2d 693, 698-99 (D.N.J. 1999);

11

see also Weichert, 128 N.J. at 441 (where the Supreme Court held that the defendant's "implied promise to pay a commission is unenforceable because of the parties' failure to agree on the amount of the commission"). Because a determination of whether the price was agreed to between the parties is a factual determination, great deference must be given to the trial court's finding. Rova Farms Resorts, Inc. v. Inv. Ins. Co. of Am., 65 N.J. 474, 501 (1974).

Plaintiffs argue that they satisfied the elements for acquiring quantum merit relief. In support of their contention, plaintiffs cite the Supreme Court's decision in Weichert, 128 N.J. at 427 and our decision in Coldwell Banker, 368 N.J. Super. at 382.

In Weichert, the plaintiff-broker informed the defendant-buyer about an available property. 128 N.J. at 430. The plaintiff-broker presented the defendant-buyer with a commission agreement, but the defendant-buyer did not sign it. Id. at 431. Over the next few months, the parties continued to discuss the commission agreement. Id. at 431-33. Before a commission agreement was reached, the defendant-buyer closed on the property. Id. at 433. Thereafter, the defendant-buyer refused to pay commission to the plaintiff-broker. Ibid. The plaintiff-broker brought an action against the defendant-buyer for breach of contract or alternatively quantum meruit. Id. at 434. In modifying our decision,

12

the Court held there was no enforceable agreement between the parties, id. at 438-39, but the defendant-buyer could recover in quantum meruit, id. at 441.

In Coldwell Banker, the plaintiffs-brokers procured a lessee for the defendant-lessor. 368 N.J. Super. at 384-85. During the negotiation of the lease agreement, the plaintiffs-brokers and the defendant-lessor orally agreed to a brokerage commission agreement, which the plaintiffs-brokers then codified in a letter they faxed to the defendant-lessor. Id. at 385. However, by the time the lease agreement was signed, there still was no signed brokerage commission agreement between the parties. Id. at 386-87. We concluded there was an unenforceable agreement between the parties as the faxed letter did not comply with the statute of frauds, N.J.S.A. 25:1-16. Id. at 391. Nevertheless, we held the plaintiffs-brokers were "entitled to pursue recovery on a quantum meruit basis." Id. at 398.

In order to obtain relief on a quantum meruit basis, "a plaintiff must establish: (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Coldwell Banker, 368 N.J. Super. at 401 (citations omitted). Trugman argues she performed in good faith as she had prior dealings with Siegel. And, she provided

him with helpful and necessary information about the Lake Terrace property so he would be properly prepared to negotiate. Trugman also notes defendants accepted her services, as evidenced by their communications regarding the Lake Terrace property.

Furthermore, plaintiff asserts these communications also demonstrate that there was an expectation of compensation. For example, plaintiff points to the text message Siegel sent her which stated, "I will pay you [sic] fee directly?" Moreover, Trugman contends the commission value she sought was "reasonable." Consequently, Trugman argues that as a result of her efforts, defendants were able to purchase the Lake Terrace property for a lower price, and, plaintiffs are therefore entitled to equitable relief. We disagree.

As plaintiffs failed to comply with the statute of frauds, they are barred from seeking equitable relief. See McCann, 65 N.J. at 310 ("a broker, who may not recover commissions from a seller directly by reason of the statute of frauds, may not accomplish the same result indirectly by a claim against the seller for [quantum meruit]"). And, plaintiffs' reliance on Weichert and Coldwell Banker is misguided as both cases are distinguishable from the matter under review.

In Weichert, our Court held a buyer liable to pay quantum meruit compensation to a broker, where the two did not form an enforceable agreement;

but, the version of the statute of frauds at the time required a writing only when the seller was responsible for the commission, and did not bar oral agreements between a buyer and a broker. 128 N.J. at 441 (referencing N.J.S.A. 25:1-9, repealed by L. 1995, c. 360, § 9, eff. Jan. 5, 1996). Thus, an award of quantum meruit in that case did not violate the policy of the statute of frauds then in effect. However, the 1996 revision of the statute of frauds requires a signed writing when a broker seeks a commission from a "principal" as distinct from only a seller, expanding the reach of the statute to commissions sought from buyers, sellers, or owners. L. 1995, c. 360, § 7.

In Coldwell Banker, our Court remanded for a determination of compensation on a quantum meruit basis, where the plaintiffs had served as a broker in procuring a tenant for a commercial lease; a draft of the lease prepared by the landlord and tenant explicitly stated the plaintiffs had negotiated the transaction and the landlord would be responsible for broker's fees; there was substantial evidence the plaintiffs had provided valuable services that had enriched the defendant; it was undisputed that the defendant accepted those services; and there was evidence the parties all expected the plaintiffs would be compensated in some amount for their services. 368 N.J. Super. at 385-88. However, unlike the present matter, the plaintiffs in Coldwell Banker attempted

to comply with N.J.S.A. 25:1-16 by forwarding a written confirmation of an oral agreement, though they failed to comply with the requirements of subsection (e) mandating service in person or via registered or certified mail. Id. at 391.

In any event, the statute of frauds bars plaintiffs' claim for finder services. The statute applies to commission claims by a "real estate broker," who is defined as "a licensed real estate broker or other person performing the services of a real estate agent or broker." N.J.S.A. 25:1-16(b), (a). The Court has held that even the limited activity of introducing a potential buyer and seller of real estate, without participating in the parties' negotiation of price and terms—in other words, the work of a "finder"—is the activity of a real estate broker. Corson v. Keane, 4 N.J. 221, 227-28 (1950) (denying claim for finder's fee by an unlicensed real estate broker). See also, Sammarone v. Bovino, 395 N.J. Super. 132, 140 (App. Div. 2007) (stating that the act of introducing two parties to explore interest in purchasing a tract of land is an action "traditionally deemed the activit[y] of a broker").

Here, the judge acknowledged "the apparent harshness of the outcome," but found "the facts here [did not] compel[] an award on quantum meruit." Moreover, the judge pointed out that the parties' prior dealings did not "vitiate the purpose and requirements of the statute [of frauds]." Indeed, the judge aptly

16

noted "[p]laintiff's failure to comply with the [s]tatute of [f]rauds created the very situation the [s]tatute is designed to avoid; fraud, incompetence, misinterpretation, sharp or unconscionable practices by real estate brokers." Casting a claim for a broker's commission as a claim in quantum meruit is an "attempt to evade the statute which [will] not be countenanced." McCann, 65 N.J. at 309.

After a thorough review of the record, we are satisfied that there was sufficient credible evidence to support the judge's determination that there was no meeting of the minds, no signed writing between the parties, and the commission amount was never agreed to, leaving an essential term open. We are equally satisfied that plaintiffs' failure to comply with the strict requirements of the statute of frauds precludes recovery on a quantum meruit theory.

III.

We next consider the principles of contract law that address when a broker is entitled to a commission. Specifically, in this instance, the judge rejected plaintiffs' claims after determining that Trugman was not the efficient procuring cause of the sale. The efficient procuring cause doctrine, sometimes referred to as the efficient "producing" cause doctrine, is a tool case law developed to ensure equitable results when a contract does not otherwise expressly specify

17

the conditions precedent to earning a commission. See DeBenedictis v. Gerechoff, 134 N.J. Super. 238, 242 (App. Div. 1975) and First N.J. Corp. v. Van Syckle, 37 N.J. Super. 469, 472 (App. Div. 1955) (articulating the rule that a broker is the efficient procuring cause of a transaction if he or she "caused a person to negotiate with defendant and that person purchased the stock and paid the price without a substantial break in the ensuing negotiations"). The basic application of the doctrine is

> in the absence of some qualifying or oppugnant expression in the contract of employment, a broker who is duly engaged earns his commission when he procures for the owner a purchaser ready, able, and willing to comply with the terms specified in the authority thus conferred, or with other or different terms which, however, are satisfactory to the owner.
>
> [George H. Beckmann, Inc. v. (Zinke's) Rainbow's End, Inc., 40 N.J. Super. 193, 196 (App. Div. 1956) (citing Marschalk v. Weber, 11 N.J. Super. 16, 21 (App. Div. 1950)).]

Accordingly, our courts have applied the doctrine "to permit a broker to recover a commission upon a sale made [even] after [the] expiration of an exclusive . . . brokerage contract." Leadership Real Estate, Inc. v. Harper, 271 N.J. Super. 152, 171 (Law Div. 1993).

When the doctrine applies, a "broker must prove that he or she caused [the] customer to negotiate with the seller and that the transaction is later

consummated through direct negotiations between the seller and the broker's customer, even though the seller accepts terms different from those expressed in the listing agreement . . . ." Ibid. The mere act of introducing a buyer to the property is not enough to constitute an efficient procuring cause of the sale. See C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 81 (App. Div. 1989) ("[I]t is clear that plaintiff introduced [the defendant] to the property. However, that does not suffice to establish plaintiff's claim to a commission.").

Here, as the judge found, plaintiffs did not satisfy the requirements of the efficient procuring cause doctrine given the rate and amount of commission were indeterminate and never reduced to a writing signed by both parties. The judge was correct in her analysis, and we discern no basis to disturb her decision.

In light of our decision on the legal issues discussed, we need not address plaintiffs' argument that the judge should have sua sponte ordered discovery as to Siegel's credibility and whether plaintiffs were the efficient procuring cause of the sale.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2316-19